# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

VS.                                          CASE NO. 6:11-cr-380-JA-NWH-1

SEAN BATURA

_____

## ORDER

In 2011, at the age of twenty, Defendant Sean Batura robbed several fast-food restaurants using his father's gun. (Doc. 60 at 6, ¶ 23). Later that year, Batura pleaded guilty to offenses arising from two of the robberies, and in 2012, he was sentenced to 385 months' imprisonment.

For approximately the last fourteen years, Batura has been serving his sentence of imprisonment. During that time, Batura has changed and so has the law. Based on a change in the law, Batura requests a sentence reduction to twenty-five years' imprisonment—300 months—under 18 U.S.C. § 3582(c)(1)(A), arguing that he is serving an unusually long sentence. (Doc. 103). The Government has filed a response in opposition, (Doc. 105), and Batura has filed a reply in support of his motion, (Doc. 108). Based on the Court's review of the parties' submissions, the motion will be granted.

## I.    BACKGROUND

In 2011, Batura pleaded guilty to two counts (Counts 1 and 3) of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) and (b), and two counts (Counts 2 and 4) of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).  (Doc. 1; Doc. 24).  On August 24, 2012, the Court sentenced Batura to 385 months' imprisonment, consisting of concurrent one-month terms on Counts 1 and 3, a mandatory minimum consecutive 84-month term on Count 2, and a mandatory minimum 300-month term on Count 4.  The 385-month term of imprisonment was below the guideline range for Batura, who, at sentencing, had a total offense level of 21 and a criminal history category of I.

Six years later—in 2018—Congress enacted the First Step Act, which provides, *inter alia*, that a twenty-five-year (300-month) consecutive mandatory minimum sentence for carrying a firearm during a crime of violence does not apply unless a defendant had a previous conviction for a § 924(c) offense.  First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403; (Doc. 103 at 8–9; Doc. 105 at 4, 10–11).  In other words, a second § 924(c) offense in the same case—as occurred here—is insufficient for the twenty-five-year consecutive mandatory minimum sentence to apply to a defendant.

Because of this intervening change in the law, Batura seeks compassionate release, arguing that he is serving an "unusually long sentence"

for the crimes committed.  The United States Sentencing Commission classifies an "unusually long sentence" as an "extraordinary and compelling reason" for a sentence reduction.  U.S.S.G. § 1B1.13(b)(6).  Batura submits that today, he would face a mandatory minimum of 157 to 214 months' imprisonment with a maximum statutory term of imprisonment of 408 months.  He requests that the Court reduce his sentence to 25 years' imprisonment—300 months—a sentence above the guideline sentencing range that he would face if sentenced today.

## II.   LEGAL STANDARDS

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010); *see also* 18 U.S.C. § 3582(c) (providing that once a term of imprisonment has been imposed, "[t]he court may not modify" it except for limited enumerated reasons).  The procedure and the factors to be considered in determining whether to grant compassionate release are set forth in 18 U.S.C. § 3582(c).

To grant a request for compassionate release, a court must make specific findings.  First, the Court must find that the defendant has exhausted his administrative rights with the Bureau of Prisons (BOP).  § 3582(c)(1)(A); *United States v. Bryant*, 996 F.3d 1243, 1264 (11th Cir. 2021).  Second, the Court must find that "extraordinary and compelling reasons," as defined by U.S.S.G. § 1B1.13, warrant a reduction.  § 3582(c); *see United States v. Elie*, No. 6:09-cr-

50 (Doc. 138 at 14) (M.D. Fla. May 3, 2024). Third, the Court must find that the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). § 1B1.13(a)(2); *see Elie*, No. 6:09-cr-50 (Doc. 138 at 21–22). Finally, the Court must consider the applicable factors set forth in 18 U.S.C. § 3553(a). § 1B1.13(a); *see Elie*, No. 6:09-cr-50 (Doc. 138 at 15). The defendant has "the burden of proving entitlement to relief under section 3582." *United States v. Kannell*, 834 F. App'x 566, 567 (11th Cir. 2021) (per curiam) (citing *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)).

## III.    DISCUSSION

### A.    Exhaustion

It is undisputed that Batura exhausted his administrative rights. He sought a sentence reduction on February 25, 2025. (Doc. 103 at 8). More than thirty days passed since the BOP's receipt of Batura's application before he filed the instant motion, and the BOP declined to file a motion on his behalf. (*Id.*).

### B.    Extraordinary and compelling reasons

In seeking a sentence reduction, Batura relies on U.S.S.G. § 1B1.13(b)(6). (Doc. 103). There is an opportunity for relief under § 1B1.13(b)(6) "where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." § 1B1.13(b)(6).

4

Batura's 385-month sentence is "unusually long." *See, e.g., United States v. Brown*, No. 12-20953-CR, 2025 WL 2429021, at *1, *3 (S.D. Fla. Apr. 25, 2025) (finding 435-month sentence unusually long); *see also United States v. Adley*, No. 03-20678-CR, 2024 WL 1961484, at *1, *3 (S.D. Fla. May 3, 2024) (finding 387-month sentence unusually long).[1]  And Batura has served more than fourteen years of that sentence.  (Doc. 103 at 12).  Finally, "an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion [was] filed." § 1B1.13(b)(6).  Thus, all three of the § 1B1.13(b)(6) conditions are satisfied.

As Batura argues—and the Government does not dispute—if he were sentenced today, he would be subject to a mandatory minimum sentence of fourteen years rather than 385 months.  (Doc. 60 at 21; Doc. 103 at 12; Doc. 105 at 4).  There is a gross disparity between a sentence of fourteen years and a sentence of thirty-two years.  *See Elie*, 6:09-cr-50 (Doc. 138 at 30) (collecting cases supporting that an eighteen-year difference reflects a "gross disparity").

---

[1] The Government argues that Batura's sentence is not unusually long because this Court recently sentenced one defendant to an 18-year sentence and another to a 30-year sentence in a Hobbs Act robbery case. *United States v. Telfort*, No. 6:24-cr-104 (Doc. 90) (M.D. Fla. Mar. 17, 2026); *United States v. Mitchell*, No. 6:24-cr-104 (Doc. 90 & Doc. 168) (M.D. Fla. Sept. 10, 2025).  But both of those sentences confirm that here, Batura's sentence is "unusually long."  One of the defendants in *Mitchell* pleaded guilty—like Batura—to four counts that are similar, if not identical, to Batura's.  But that defendant received an 18-year sentence. *Telfort*, No. 6:24-cr-104 (Doc. 90).  The other defendant, who went to trial and was convicted of ten counts of robbery and possessing a firearm (as a convicted felon), received a 30-year sentence. *Mitchell*, No. 6:24-cr-104 (Doc. 168).

While rehabilitation alone is insufficient to constitute an extraordinary and compelling reason, it "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t); *United States v. Gibson*, No. 4:09cr009 (Doc. 461 at 8, 10–11) (N.D. Fla. Apr. 12, 2024). At the time of Batura's offense, he was only twenty years old and working as a delivery driver. Batura purportedly committed the offense because his car broke down and his income was cut from about $1,400 a month to $300 a month, and he was desperate to get his car repaired. (Doc. 60 ¶ 85). The Government asserts that post-release, if Batura experienced employment difficulties, he might reoffend. But during Batura's fourteen years of incarceration, he has matured. He is now 34 years old and no longer "in the midst of adolescent brain development." (Doc. 103 at 17).

In 2024, the BOP's psychologist submitted a letter acknowledging Batura's completion of the Resolve Program[2] and stating that in the two years the psychologist had been running the program, Batura had "been one of [their] better participants." (Doc. 103-4 at 2). Batura had "completed every single

---

[2] The Resolve Program is "a Cognitive Behavioral Therapy program designed . . . to decrease [an inmate's] incidents of trauma related to psychological disorders and improve [their] level of functioning." U.S. DOJ Reentry Services Division, First Step Act Approved Programs Guide, at 25 (Feb. 2021) https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf [https://perma.cc/F4QC-DLE9]; (*see* Doc. 103 at 14).

assignment and demonstrated great insight." (*Id.*). In addition to completing the Resolve Program—which "is at least a 36[-]week commitment"—during incarceration, Batura has completed over 1,100 hours of educational courses. (Doc. 103 at 14, 16; Doc. 103-1 at 2–3; Doc. 103-4 at 2). He has never had a violent disciplinary infraction and has not had any disciplinary infractions in over four years. (Doc. 103-2 at 2–3). Batura's conduct while in custody weighs in favor of a finding that there are extraordinary and compelling reasons to reduce his sentence.

Thus, under U.S.S.G. § 1B1.13(b)(6) and (d), Batura contends that there are extraordinary and compelling reasons to reduce his sentence. The Government's arguments to the contrary are rejected. The Government asserts that Batura is not eligible to receive relief under § 1B1.13(b)(6) and that even if he were, that section is invalid because the Sentencing Commission exceeded its authority in promulgating it. (Doc. 105 at 6–7 (citing § 3582(c)(1)(A) and 28 U.S.C. § 994(a))). In support of its position, the Government raises the same arguments that have already been rejected by this Court and many others in the Eleventh Circuit, including: (1) the Commission cannot exercise its authority in contravention of its statutory authority; (2) § 1B1.13(b)(6) conflicts with the text, context, structure, and purpose of § 3582(c)(1)(A) and 28 U.S.C. § 994(a); (3) a nonretroactive change in the law cannot serve as an extraordinary or compelling reason for a sentence reduction; (4) treating intervening changes

7

in the law as extraordinary and compelling reasons for a sentence reduction would undermine the primary purpose of the Sentencing Reform Act; (5) allowing courts to apply nonretroactive changes in the law to particular defendants violates separation-of-powers principles; and (6) Congress's failure to reject the Sentencing Commission's determination does not validate that determination.[3]  This Court, like others in the Eleventh Circuit, rejects the Government's previously asserted arguments.  (*Compare* Doc. 105, *with United States v. McCain*, No. 3:12-cr-34 (Doc. 155 at 5–20) (M.D. Fla. May 2, 2024), and

---

[3] *See, e.g., United States v. Borja-Antunes*, No. 5:11-cr-17, 2025 WL 2821203, at *3 (M.D. Fla. Oct. 3, 2025); *United States v. St. Preux*, 5:06-cr-29, 2024 WL 4692033, at *3 (M.D. Fla. Nov. 6, 2024); *United States v. Jean*, No. 2:11-CR-97, 2024 WL 3948834, at *3 (M.D. Fla. Aug. 26, 2024) ("Because the Eleventh Circuit has never held that nonretroactive changes cannot be extraordinary and compelling reasons, this Court can accept § 1B1.13(b)(6)'s validity and applicability." (quoting *United States v. Allen*, 717 F. Supp. 3d 1308, 1315 (N.D. Ga. 2024))); *accord United States v. Allen*, No. 2:03-CR-74, 2024 WL 4052904, at *3 (M.D. Fla. Sept. 5, 2024); *United States v. Bizzell*, No. 6:10-CR-145, 2024 WL 1832995, at *1 (M.D. Fla. Apr. 26, 2024); *United States v. McCain*, No. 3:12-cr-34 (Doc. 155 at 5) (M.D. Fla. May 2, 2024) ("[I]n and of itself, a nonretroactive amendment to a sentencing statute is not extraordinary and compelling. . . . But that is not what § 1B1.13(b)(6) authorizes. . . . Rather, the Sentencing Commission determined that such an amendment could lead to an extraordinary and compelling reason for a reduction—namely, a gross disparity between an individual's actual sentence and the sentence he would have received under the amended statute."); *United States v. Elie*, No. 6:09-cr-50 (Doc. 138) (M.D. Fla. May 3, 2024); *United States v. Smith*, No. 99-cr-66, 2024 WL 885045, at *2 (N.D. Fla. Feb. 20, 2024); *United States v. Padgett*, No. 06-cr-13, 2024 WL 676767, at *3 (N.D. Fla. Jan. 30, 2024); *United States v. Joseph*, No. 12-60110-CR, 2024 WL 4341964, at *7 (S.D. Fla. May 15, 2024); *United States v. Franklin*, No. 95-00787-CR, 2024 WL 4295912, at *3 (S.D. Fla. Sept. 18, 2024) (citing *United States v. Adley*, No. 03-20678-CR, 2024 WL 1961484, at *4 (S.D. Fla. May 3, 2024), and *United States v. Ware*, No. 1:97-CR-00009, 2024 WL 1007427, at *4–7 (N.D. Ga. Mar. 6, 2024)); *United States v. Durden*, No. 1:07-CR-0020, 2024 WL 4182591, at *4 (N.D. Ga. May 30, 2024). *But see United States v. Plowright*, No. CR 107-167, 2025 WL 474919 (S.D. Ga. Feb. 11, 2025).

8

*Elie*, No. 6:09-cr-50 (Doc. 131 at 5–18)).

### C.    Not a danger to the community

Next, under § 1B1.13(a)(2), the Court must determine whether the "defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The factors in § 3142(g) are: (1) "the nature and circumstances of the offense," (2) "the weight of the evidence," (3) Defendant's "history and characteristics," and (4) "the nature and seriousness of the danger . . . posed by [Defendant's] release." 18 U.S.C. § 3142(g).

While Batura's offenses involved a firearm, he is not now a danger to the safety of the community. His offenses were committed when he was young, financially stressed, and had little financial support. And he did not have prior convictions, other than the possession of marijuana as a minor. (Doc. 60 at 18). The Government hypothesizes that Batura might lose his employment post-release and again become a danger to the community. But Batura's time during imprisonment has matured him and his familial support and drive to become an artist distances him from this hypothetical. Batura's completion of the BOP's 36-week Resolve Program designed to embrace emotional resilience and his completion of 1,100 hours of self-improvement classes support this conclusion. (Doc. 103 at 14–15; Doc. 103-1 at 3).

Batura plans on exploring artistry by training to become a tattoo artist after release. (Doc. 103 at 20). Some of his disciplinary infractions reflect his

9

interest in tattooing—for example, one infraction states that "Batura is considered the tattoo artist in the prison." (Doc. 103-2 at 2–3). Moreover, members of his family support Batura as reflected in letters submitted to the Court. Those letters reflect the development of a close relationship between Batura and his family. (Doc. 103-6 at 2; Doc. 103-7 at 2; Doc. 103-8 at 2; Doc. 103-10 at 2; Doc. 103-11 at 2; Doc. 103-12 at 2). The letters also establish that his family will provide him housing and support while he works to become a tattoo artist. (Doc. 103-5 at 2). And importantly, the BOP has determined that Batura is at a minimum risk of recidivism. (Doc. 103-1 at 5). The Court finds that if released early, Batura would not present a danger to the community.

### D.    § 3553 factors

Finally, the Court must consider the relevant factors under § 3553(a) in determining whether reduction is appropriate. § 1B1.13(a); *see McCain*, No. 3:12-cr-34 (Doc. 155 at 4 & n.2) (explaining that the court must consider § 3553(a) factors only to the extent that they are relevant). Section 3553(a)'s factors are similar to the § 3142(g) factors and include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training. 18 U.S.C. § 3553(a)(1)–(2). A unique factor under § 3553 is "the need

to avoid unwarranted sentenc[ing] disparities." *Id.* § 3553(a)(6).

Many of the § 3553 factors are relevant to the Court's finding above that Batura is not a danger to the public. The Court has considered that the nature and circumstances of his crimes of conviction involved firearms and threats when a child was present. It has also considered his history and characteristics. He was immature and when he committed the underlying offenses. (Doc. 60 at 21). While imprisoned, Batura has not engaged in violent conduct. And reducing Batura's sentence reduces the disparity between his original sentence and the sentences defendants would receive today for the same offenses.

## IV.    CONCLUSION

As discussed, Batura has presented "extraordinary and compelling reasons" under § 1B1.13(b)(6) and (d) that merit reduction of his sentence. His early release would not endanger the community, and the § 3553 factors favor the reduction in sentence. Accordingly, Batura's motion for compassionate release (Doc. 103) is **GRANTED** and his sentence is reduced to twenty-five years (300 months). Batura's previously imposed terms of supervised release remain unchanged.

**DONE** and **ORDERED** on March _16_, 2026.

JOHN ANTOON II
United States District Judge

11

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
Counsel for Defendant
Sean Tyler Batura